488 P.2d 730

**HOLIDAY MANAGEMENT COMPANY, a partnership, Plaintiff-Appellee,**

**v.**

**The CITY OF SANTA FE, a Municipal Corporation et al., Defendants-Appellants.**

**No. 9095.**

Supreme Court of New Mexico.

Aug. 30, 1971.

John F. McCarthy, Jr., Sumner S. Koch, Santa Fe, for defendants-appellants.

George A. Graham, Jr., Truth or Consequences, for plaintiff-appellee.

## OPINION

STEPHENSON, Justice.

Defendant-appellant ("City") has appealed from the issuance of an injunction which prohibited it from enforcing its zoning ordinances as they applied to a nonconforming Holiday Inn sign.

Neither plaintiff-appellee ("the partnership") nor its predecessor in interest owned the sign. Rather, both were lessees of the sign which was owned by Holiday Inns of America, Inc. ("the corporation") which was not a party.

The parties stipulated that the real estate where the partnership's motel is located was formerly owned by D & L Motels, a partnership, which constructed the motel building in 1961; that the sign in question was erected about December, 1961, complying with all then-existing ordinances; that D & L entered into a License (hereinafter called "franchise") Agreement with Holiday Inns Corporation on May 24, 1961, and a "Lease for Holiday Inn Sign" ("the first sign lease") with the corporation on June 20, 1961; that the first ordinance affecting the sign was No. 1963-19, adopted November 4, 1963, followed by the less restrictive ordinance, No. 1964-20, passed on August 26, 1964; that early in 1968 D & L Motels conveyed the motel real estate to the partnership and that the corporation about the same time issued a franchise and a sign lease ("the second sign lease") to the partnership; that under its respective sign agreements with D & L Motels and with the partnership, the corporation retained title to the sign; that on July 30, 1969, the City enacted ordinance No. 1969-18 amending the 1964 sign ordinance; that the partnership's motel is located in a C-2 (General Commercial) zoning district; and that the only claimed violation is that the face area of the sign in question exceeds that permitted by ordinances Nos. 1964-20 and 1969-18.

Under both sign leases, the sign was and remained the personal property of the corporation and was precluded from becoming a fixture or appurtenance to the real estate.

There is no question but that the sign violates all of the applicable ordinances, and we are thus not concerned that one of them, less restrictive in its effect, was adopted after the partnership's entry upon the scene. The sole issue is whether the City is free to enforce the material ordinances.

The primary position of the partnership is summarized in its answer brief as follows:

"The rights of the Plaintiff, we contend, were determined prior to the enactment of any zoning ordinances by the City of Santa Fe which would require the removal of the sign. To now cause the Plaintiff to move the sign would be to deprive it of a pre-existing right and

deprive it of its property without paying just compensation therefor, it would impair the obligation of the pre-existing contract providing the maintenance of the sign and it will deprive Plaintiff of its property without due process of law, all because the ordinance passed by the City of Santa Fe would operate retrospectively and change the legal consequences of the prior acts of the Plaintiff herein."

It is obvious that if the partnership cannot project its rights in the sign or sign lease back in time so that the rights antedate the enactment of the material ordinance, its position must fail. This is an endeavor attended with some difficulty.

The partnership asserts that it has title to the land upon which the sign is emplaced; that it acquired its rights in the sign as "part and parcel" of the same transaction by which it acquired the motel, and that the sign and the motel building are "one entity." These factual assertions, in most instances, find support in the trial court's findings. But they lack legal significance in that they do not bring into play any legal principle which causes the partnership's rights in the sign or sign lease to antedate the sign ordinance. At least no such operative legal principle is suggested to us.

The partnership places its principal reliance upon an assertion that the second sign lease was a "re-issue" of the first. The record shows that the partnership's predecessor and the corporation entered into a "Lease For Holiday Inn Sign" in 1961. The first sign lease provides that in event the business or a material part thereof should be voluntarily or involuntarily transferred, all rights and interests of the predecessor (D & L Motels) in the sign should terminate. The corporation and the partnership entered into a "Maintenance Lease For Holiday Inn Great Sign" on April 4, 1968. Typed upon this second sign lease are the words "Reissued to new owners 1/29/68." Nothing in the transcript explains this notation. The parties stipulated that the first sign lease

was reissued to the partnership and the trial court so found. No document or writing purports to transfer the first sign lease or any interest therein or in the sign to the partnership. To the contrary, the second sign lease is a completely separate document. It does not purport to cause the partnership to succeed to the rights of its predecessor in the sign or in the first sign lease, and in fact is executed on a different form. The City points out numerous differences in the documents, some of which are minor, but others of which are of some significance.

Thus, in view of what we have said of other contentions of the partnership, its theory that its rights in the sign or sign lease antedate the ordinance depends upon the meaning to be attributed to the word "reissue."

"Reissue" is not a word of precise legal meaning. Words and Phrases, Permanent Edition, indicates that it has not been judicially defined except as a word of technical meaning in the field of patents. It is not listed in Black's Law Dictionary, Revised Fourth Edition. Webster's Third New International Dictionary defines the noun and verb forms, so far as here pertinent, as follows:

"reissue—n. A second or repeated issue (as of a publication) with change only in price or form. * * *"

"re-issue—vb: To come forth again; * * * vt: to issue again; esp: to cause to appear or become available after a period of absence or unavailability."

In our view, the word "reissue" itself refutes the concept of uninterrupted continuity essential to the partnership's theory. This is borne out by the dictionary definition. If the first sign lease had continued, uninterrupted, there would have been no occasion for a second or repeated issue. It would not have come forth again or appeared or become available after an absence. These considerations, coupled with the lack of any transfer of rights in the sign or first sign lease to the partnership, the termination provisions of the first sign

lease in event of transfer, and the differences between the two sign leases, impel us to hold that the partnership's rights did not vest prior to the passage of the ordinance, and make consideration of the various authorities cited by it unnecessary.

■ The basis for the trial court's making the injunction permanent was a determination that the sign ordinance was unconstitutional. In the second point of the parties' briefs, the City claims that the court erred in this regard and the partnership with equal vigor asserts that it did not. The background to this issue is that the ordinance in question—so far as it affected non-conforming signs which existed at the time of its adoption—provided for compliance within five years by either removal or alteration. The trial court in its decision found, inter alia, that the economic life of the sign was thirty to forty years; that it was not a health, safety or moral hazard and did not adversely affect the general welfare; that the five-year toleration period was arbitrary, and that enforcement of the ordinance requiring the sign's removal would result in the taking of private property for public use without compensation.

No doubt in order to relate its views to the partnership, the court also concluded that the partnership, as successor in interest to its predecessor, was entitled to any rights its predecessor had, and, as we have said, that the sign lease had been reissued. We have previously pointed out the fallacy of this. It further concluded that the right to display the sign in its existing form became vested in the partnership's predecessor prior to the enactment of the sign ordinance and that the ordinance was invalid as to the partnership, another concept with which we have not agreed.

Had the partnership's predecessor continued as lessee of the sign from the time of the first sign lease until the time of trial, different questions would have been presented. Similarly, had the corporation been a party, since it was the owner of the sign prior to the enactment of the ordinance and continued as such to the time of judgment, it could doubtless raise the contentions advanced by the partnership. The validity of the partnership's legal contentions is doubtful, however, no matter who may advance them, not only as to the police powers of a municipality in general, (Barber's Super Markets, Inc. v. City of Grants, 80 N.M. 533, 458 P.2d 785 (1969); Green v. Town of Gallup, 46 N.M. 71, 120 P.2d 619 (1941)) but also as to its specific power to impose reasonable controls for aesthetic purposes (Cromwell v. Ferrier, 19 N.Y.2d 263, 279 N.Y.S.2d 22, 225 N.E.2d 749 (1967); State v. Diamond Motors, Inc., 50 Hawaii 33, 429 P.2d 825 (1967); cf. City of Santa Fe v. Gamble-Skogmo, Inc., 73 N.M. 410, 389 P.2d 13 (1964)).

However, in view of our decision that no rights regarding the sign vested in the partnership until long after the ordinance was enacted and any material amendments adopted, the standing of the partnership to raise these questions below is drawn sharply into question.

The entire thrust of the partnership's argument that the statute, as applied to it, is unconstitutional by reason of the toleration period being arbitrarily short, is predicated upon its rights in the sign having been in existence at the time of passage of the ordinance. It acknowledges the validity of those reasonable zoning ordinances which are prospective rather than retrospective in nature. The authorities cited by it deal with retrospective ordinances. Here, the reverse is true, since the ordinance antedates the acquisition of rights in the sign by the partnership. The partnership was charged with knowledge of the ordinance and, in point of fact, the managing partner of the partnership was informed of and aware of the sign ordinance before the partnership acquired the motel. It knowingly acquired rights in a then non-conforming use. It should not now be heard to complain that such action has not worked to its advantage. The passage of the ordinance and the commencement of the running of the toleration period, which incidentally was extended by

one of the amendments, thus did not affect any existing rights of the partnership.

We hold that under the facts of this case and the construction we have placed upon them, the partnership lacked standing to procure the injunction, and that it was improvidently issued.

The case is reversed, with instructions to dissolve the injunction and enter judgment for the City.

It is so ordered.

McMANUS and OMAN, JJ., concur.