646 P.2d 565

**TEMPLE BAPTIST CHURCH, INC., et al., Plaintiffs-Appellees,**

**Donrey Outdoor Advertising, Intervenor-Appellee,**

v.

**CITY OF ALBUQUERQUE, a municipal corporation, and David Rusk, Mayor of the City of Albuquerque, Defendants-Appellants.**

No. 13613.

Supreme Court of New Mexico.

May 3, 1982.

Rehearing Denied June 15, 1982.

George R. Pat Bryan, III, City Atty.,
Charles N. Estes, Jr., James P. Fitzgerald,
Asst. City Attys., Albuquerque, for defend-
ants-appellants.

Eaves & Darling, John M. Eaves, Albuquerque, for intervenor-appellee.

Melton & Puccini, Louis Puccini, Jr., Timothy Flynn-O'Brien, Modrall, Sperling, Roehl, Harris & Sisk, George T. Harris, Jr., James P. Houghton, Albuquerque, for plaintiffs-appellees.

Steven Barshov, Santa Fe, amicus curiae, New Mexico Municipal League.

## OPINION

SOSA, Senior Justice.

The City of Albuquerque (City) appeals the district court's judgment declaring unconstitutional the Albuquerque, N. M., Rev. Ordinances, ch. 7, art. XIV, 1974 (1980), (hereinafter Code) pertaining to the regulation of signs, and permanently enjoining enforcement of those regulations against appellees.

The issues on appeal are:

I. Whether the City failed to preserve the issues for appellate review;

II. Whether the City's sign ordinance is a reasonable exercise of the City's police power;

III. Whether enforcement of the ordinance involves an unconstitutional taking of private property for which payment of just compensation is required;

IV. Whether the sign ordinance violates free speech;

V. Whether enforcement of the sign ordinance operates as an unconstitutional *ex post facto* law;

VI. Whether enforcement of the ordinance unconstitutionally impairs the obligation of contract.[1]

## I.

On December 31, 1980, plaintiffs filed their Complaint to Void Sign Ordinance and Verified Motion for Temporary Restraining Order and Preliminary Injunction and served the City.[2] After eight district judges had been disqualified and one had recused himself, Judge Franchini, on January 7, 1981, heard plaintiffs' motion. No ruling was made during the course of that proceeding; however, a hearing was scheduled for January 26, 1981, to argue the constitutional issues. After oral argument, the court orally announced its decision, holding the sign ordinance unconstitutional. After the decision, plaintiffs requested leave to amend their complaints. On March 9, 1981, the last of the plaintiffs' amended complaints were filed, and the court filed its judgment. The City had until January 30, 1981, three days after the court had made its oral decision, in which to answer the original complaints. The City had until March 19, 1981, to answer the last of the amended complaints. However, to date, the City has not filed an answer.

■ Appellees argue that, since the City failed to present affidavits or other evidence in opposition to appellees' affidavits and verified complaints, all of appellees' allegations are admitted and, since the City has not filed a responsive pleading, no issues are preserved for review. We disagree.

The district court made it clear that the hearing on January 26 was not to be an evidentiary hearing, but was only for argument on constitutional issues as a matter of law. The court, referring to the January 26 hearing, stated:

It is going to be virtually a legal argument. I don't see where you are going to need àny evidentiary material presented to the Court. I think you are going to have to have the Ordinance, and it is going to be a matter of legal arguments.

The only evidentiary material presented at the hearing was the Code and related documents; no affidavits were attached to the original complaints. The district court relied on briefs, argument of counsel and the

---

1. Appellees raised other issues at the trial court which were not decided and which are not before us for review.

2. The City notes that this service was invalid, since it is the City Clerk of Albuquerque, not the City Attorney, who must be served in a suit involving the City. N.M.R.Civ.P. 4(e)(5), N.M. S.A.1978 (Repl.Pamp.1980).

Code itself before rendering its oral decision. To say that the court relied on the affidavits first attached to the amended complaint only hours before the court filed its judgment is a specious contention. The City was not obliged to introduce evidence at the hearing.

Regarding the City's failure to file responsive pleadings, we are of the opinion that this does not prejudice their appeal. Rule 11 of the New Mexico Rules of Civil Appellate Procedure, N.M.S.A.1978, states that "[t]o preserve a question for review it must appear that a ruling or decision by the trial court was fairly invoked."

During the course of the proceedings in the case at bar, appellees filed a complaint setting forth numerous allegations. After a preliminary hearing, the district court requested that the parties submit briefs. In its *brief*, the City responded to each allegation made by appellees in their complaint.

▉ Although this Court does not condone such a deviation from the standard rules of procedure which require that a responsive pleading be filed, we cannot say that the issues before us were not fairly invoked at the district court level. Both parties to this action filed their briefs and argued before the district court. The court then entered its judgment. Although proper pleading is important, its importance inheres in its effectiveness as a means of accomplishing substantial justice. *See* N.M. R.Civ.P. 8(f), N.M.S.A.1978 (Repl.Pamp. 1980).

In addition, the constitutional issues presented on appeal are of a general public interest and are properly before this Court for review. N.M.R.Civ.App. 11, N.M.S.A. 1978.

## II.

▉ Of paramount importance to the disposition of the remaining issues in this case is a determination of whether the sign ordinance is a valid exercise of the City's police power. It is well settled that municipalities have no inherent right to exercise police power; their right must derive from authority granted by the State. *City of Santa Fe v. Gamble-Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964). The New Mexico Legislature has granted municipalities zoning authority for the purpose of promoting the health, safety, morals or the general welfare of their communities. § 3–21–1, N.M. S.A.1978. The Legislature limits the zoning authority of municipalities by requiring a comprehensive municipal plan designed to satisfy certain enumerated statutory purposes. § 3–21–5, N.M.S.A.1978. The City of Albuquerque has such a comprehensive plan. CODE.

▉ In examining this sign ordinance, we must apply the general principles of zoning law. Thus, the ordinance reaches this Court attached with a presumption of validity. *City of Alamogordo v. McGee*, 64 N.M. 253, 327 P.2d 321 (1958). The burden is on the sign owners to overcome this presumption by proving that the ordinance is not reasonably related to its stated purpose. *Gamble-Skogmo, supra.* The City's sign ordinance seeks to regulate the number, size and height of commercial and noncommercial signs. The stated intent of the Code is

to promote the health, safety, convenience, and general welfare of the citizens of the city [of Albuquerque]. [T]o help control congestion in the streets and public ways; to control and abate the unsightly use of buildings or land; * * * and to enhance the appearance of the landscape.

§ 2 Code.

In 1978, the City published a Manual of Sign Regulations, Albuquerque, N.M., Rev. Ordinances, ch. 7, art. XIV (1974), (Manual) with the intent to concisely present the sign ordinances. In its Manual, the City states: "Incidental structures such as signs * * * shall be designed for minimal visual distraction. Signing shall be limited to the minimum size and number necessary for identification purposes." * * * The general "intent" of the [Comprehensive City] Zoning Code is contained in Section 2 of that ordinance. While other terms listed there are to some extent relevant to the

sign regulations, the intent of promoting the "general welfare of the citizens of the city" is the most relevant.

Manual, p. 1 (quoting Albuquerque/Bernalillo County Comprehensive Plan—Policies Plan, 2(*o*) (1975)).

Appellees argue that the limited purpose, as stated in the Manual, evidences the fact that aesthetics alone is what the City relies on to support the constitutionality of the ordinance. The City's reply is that, although aesthetics is the predominant objective of the sign ordinance, traffic safety was also a consideration of the City Council when enacting the sign ordinance.

The district court agreed that the objectives of the ordinance included both aesthetics and traffic safety. However, the district court held that the sign ordinance was not reasonably related to traffic safety, and zoning solely for aesthetic purposes was an invalid exercise of the City's police power. We disagree with the district court's conclusions.

On appeal, the parties and amicus curiae have thoroughly briefed the issue of whether zoning solely for aesthetic purposes was a valid exercise of the police power.

In New Mexico, although we have hinted toward approval of zoning for aesthetics alone, we have never so held. In *Gamble-Skogmo, supra,* this Court did not find it necessary to decide whether aesthetic considerations furnished sufficient ground for the exercise of the police power, as is increasingly held by modern authorities, but held that aesthetics could not be entirely ignored. The Court quoted the following language from *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 141 A.2d 606, 612 (1958):

> "Not only is the preservation of the attractive characteristics of a community a proper element of the general welfare, but also the preservation of property values is a legitimate consideration * * *."

*Gamble-Skogmo, supra* 73 N.M. at 417, 389 P.2d at 18.

In *Holiday Management Company v. City of Santa Fe,* 83 N.M. 95, 488 P.2d 730 (1971), this Court stated, albeit in dicta, that any argument against a municipality's specific police power to impose reasonable controls for aesthetic purposes is doubtful. In *Stuckey's Stores, Inc. v. O'Cheskey,* 93 N.M. 312, 600 P.2d 258 (1979), *appeal dismissed,* 446 U.S. 930, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980), we coupled aesthetic considerations with economics in sustaining the constitutional validity of the New Mexico Highway Beautification Act, §§ 67–12–1 through 67–12–14, N.M.S.A.1978. Therein, we recognized that preservation and promotion of aesthetic standards serve as an adequate basis for comprehensive anti-billboard legislation.

Other jurisdictions are basically split on the issue of whether aesthetic considerations alone suffice to sustain a municipality's exercise of their police power.

The rule, until recently, was that aesthetics alone is not a sufficient justification for the exercise of police power. The courts reasoned that, since aesthetic considerations varied greatly with the wide variation of taste and culture, aesthetics should only be an auxiliary consideration in justifying the exercise of municipal police power. *See, e.g., Stoner McCray System v. City of Des Moines,* 247 Iowa 1313, 78 N.W.2d 843 (1956). As regards signs, it was generally held that the prohibition or restriction on the erection of signs, insofar as the signs constituted a menace to public safety or welfare, was constitutionally valid. *See, e.g., Naegele Outdoor Adv. Co. v. Village of Minnetonka,* 281 Minn. 492, 162 N.W.2d 206 (1968); 101A C.J.S. *Zoning and Land Planning* § 61 (1979).

The first United States Supreme Court case to address aesthetics as a valid consideration for exercise of a municipality's police power was *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). In upholding a municipality's exercise of eminent domain to remove slum areas, the Court stated:

> The concept of the public welfare is broad and inclusive. [Citation omitted.] The values it represents are spiritual as well as physical, aesthetic as well as monetary.

It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.

*Id.* at 33, 75 S.Ct. at 102.

Since the *Berman v. Parker* case, it has become apparent that the emerging majority favors aesthetic considerations alone as an adequate basis for zoning. *See, e.g., Suffolk Outdoor Advertising Co. v. Hulse,* 43 N.Y.2d 483, 373 N.E.2d 263, 402 N.Y.S.2d 368 (1977), *appeal dismissed,* 439 U.S. 808, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978). The rationale for recognizing aesthetics is that aesthetics is inextricably intertwined with "general welfare," since it provides for comfort, happiness, and enhancement of the citizens' cultural life and sustains the value of property. *Westfield Motor Sales Co. v. Town of Westfield,* 129 N.J.Super. 528, 324 A.2d 113 (1974), and cases cited therein.

■ Although we recognize that some jurisdictions reject consideration of aesthetics alone as justifying the exercise of police power, *Metromedia, Inc. v. City of Des Plaines,* 26 Ill.App.3d 942, 326 N.E.2d 59 (1975); *City of Scottsbluff v. Winters Creek Canal Co.,* 155 Neb. 723, 53 N.W.2d 543 (1952); *Sun Oil Co. of Pa. v. City of Upper Arlington,* 55 Ohio App.2d 27, 379 N.E.2d 266 (1977), we are of the opinion that the better rule is that aesthetic considerations alone do justify the exercise of police power.

■ By recognizing aesthetic considerations alone as a justification for the exercise of the police power, we do not give it a blanket approval. The ordinances in question must still be construed for their reasonableness in relation to aesthetic purposes. *Westfield Motor Sales Co. v. Town of Westfield, supra.* Moreover, if the ordinance in question were to impinge on a fundamental right, then the ordinance must "directly advance" the interests of aesthetics. *See Metromedia v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981)

(San Diego's general ban on signs carrying noncommercial advertising violates the first and fourteenth amendments of the United States Constitution, since it restricts the content of billboards to commercial messages). Although an ordinance may be upheld as constitutional on its face, specific provisions of the ordinance, because of their application under existing circumstances, may be held to be invalid. *Suffolk Outdoor, supra.*

■ Upon examination of the ordinance in question, we hold that the ordinance is constitutionally valid on its face. The ordinance is reasonably related to the substantial municipal interest in aesthetics. We cannot say that the regulation of number, height and size of signs does not aid in creating or preserving an overall desirable ambience in the Albuquerque community.

■ In addition, although aesthetics was the predominant consideration of the Albuquerque City Council in enacting the sign ordinance, traffic safety was also advanced as an auxiliary consideration. There is no question that sign regulations, such as we have in the case at bar,[3] are reasonably related to traffic safety. *See Metromedia v. City of San Diego, supra; Veterans of For. Wars, etc. v. Steamboat Springs,* 195 Colo. 44, 575 P.2d 835, *appeal dismissed,* 439 U.S. 809, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978); *Hilton v. City of Toledo,* 62 Ohio St.2d 394, 405 N.E.2d 1047 (1980).

### III.

The next issue we address is whether the sign ordinance, as it pertains to signs existing prior to January 1, 1976, constitutes a "taking" of private property for which payment of just compensation is required pursuant to U.S.Const. amend. V, and N.M. Const., Art. II, § 20.

■ The general rule is that a regulation which imposes a reasonable restriction on the use of private property will not constitute a "taking" of that property if the

---

**3.** In particular, look at § 40.E.2.a. (1), (2) and (3) Code (signs contributing to confusion of

traffic control; signs which attempt to control traffic; clear sight triangle sign).

regulation is (1) reasonably related to a proper purpose and (2) does not unreasonably deprive the property owner of all, or substantially all, of the beneficial use of his property. *Stuckey's, supra.* Thus, if a regulation simply prohibits the use of property for purposes declared to be injurious to the health, morals or safety of the community, the prohibition cannot be deemed a "taking" of property for the public benefit. *Goldblatt v. Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

▇ We have already held that the sign ordinance regulating the size, height and number of signs is reasonably related to the proper goals of aesthetics and traffic safety. No doubt, when the City of Albuquerque enacted this ordinance, they recognized that some loss would fall on a sign owner or user. As such, the nonconformance regulations of the Code provide that signs which first became nonconforming due to the passage of the 1976 sign ordinance were required to conform within five years of the effective date of the ordinance or January 1, 1981. § 40.D.1.a.(3) Code. Such a grace period in the law of zoning is commonly referred to as an "amortization" period. 1 R. Anderson, American Law of Zoning 2d, § 6.66 (1976). "Amortization" does not connote a requirement of compensation, but merely suggests that a sign owner or user is put on notice that he has a certain period of time in which to make necessary adjustments to bring his nonconforming structure into conformity with the sign ordinance. *Art Neon Co. v. City and County of Denver,* 488 F.2d 118 (10th Cir. 1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

▇ Courts in other jurisdictions have consistently upheld "amortization" provisions which require termination of nonconforming signs within a period of one to five years. *See, e.g., E. B. Elliott Adv. Co. v. Metropolitan Dade County,* 425 F.2d 1141 (5th Cir. 1970); *County of Cumberland v. Eastern Federal Corp.,* 48 N.C.App. 518, 269 S.E.2d 672, *cert. denied,* 301 N.C. 527, 273 S.E.2d 453 (1980); 1 R. Anderson, American Law of Zoning 2d, § 6.66 (1976). However,

the dispositive inquiry is whether the amortization period is reasonable. *Art Neon Co., supra*; 82 Am.Jur.2d *Zoning and Planning* § 188 (1976). If the period is reasonable, it is a constitutional means for municipalities to terminate nonconforming uses and, as such, is a constitutional alternative to just compensation. *See* Annot., 22 A.L.R.3d 1134 (1968). The rationale for recognizing amortization periods is that the power to zone would be ineffective unless zoning authorities also have the power to ultimately, under reasonable conditions, terminate nonconforming uses. *See generally Service Oil Co. v. Rhodus,* 179 Colo. 335, 500 P.2d 807 (1972).

In order to decide the reasonableness of an amortization period, courts generally review evidence relating to the circumstances bearing upon a balancing of the public gain against the individual loss. 82 Am.Jur.2d *Zoning and Planning* § 189 (1976). Factors such as the portion of an individual's business which is being affected and the advantage of maintaining a nonconforming structure have been considered. *See, e.g., Art Neon Co., supra.*

▇ In this case, the lower court did not review any evidence bearing on this issue. Without this evidence, a court cannot determine whether the amortization period is a reasonable means for terminating certain beneficial uses of private property. As such, we remand for an evidentiary hearing on this issue.

▇ Finally, appellees' contention that § 42A–1–34, N.M.S.A.1978 (Repl.Pamp. 1981), applies to the instant case is without merit. Section 42A–1–34 provides in pertinent part:

No municipal, county or local zoning authority or any other political subdivision of the state shall remove or cause to be removed any lawfully erected and maintained advertising structure without paying just compensation.

The Act was declared an emergency and became effective April 8, 1981. 1981 N.M. Laws, ch. 284, § 2. However, the Act was to take effect during the pendency of this

case and is not applicable to these parties. N.M.Const., Art. IV, § 34.

## IV.

Both parties at the trial level briefed the issue of whether the sign ordinance abridged freedom of speech in violation of U.S.Const. amends. I, XIV and N.M.Const., Art. II, § 17. However, the district judge did not decide this issue. Since the issue is one involving the general public interest and involves a fundamental right of the sign owners to free speech, we proceed to decide the issue. N.M.R.Civ.App. 11.

 Since the sign ordinance does not prohibit speech altogether, the precise issue we must address is whether the sign ordinance is a legitimate time, place and manner restriction on speech. The criteria we must analyze are threefold: (1) Does the restriction serve a significant government interest; (2) is the restriction justifiable without reference to the content of the regulated speech; and, (3) does the restriction leave open ample alternative channels of communication? *Stuckey's, supra.*

The sign ordinance restricts the height, size and number of signs a sign owner or user may use or maintain. We have already held that such a restriction serves the City's significant interest in promoting aesthetics and traffic safety. We are equally satisfied that the sign ordinance restrictions are justifiable without reference to content.

 Appellees argue that the content of political and religious signs is regulated, and, as such, the ordinance cannot be justified without reference to content. We disagree.

 As regards religious signs, Section 40.E.2.d(8) Code provides that religious organizations may use off-premise name, directional and information signs in any zone.

Contrary to what appellees contend, a religious organization can post an off-premise sign which states, for example, "Jesus Saves," so long as the "information" is provided in compliance with the sign height, size and number restrictions of the Code.[4]

Second, the Code is devoid of any restriction on the dissemination of political ideas by means of a sign (*e.g.*, "United States out of El Salvador"). The only restriction on political signs is that campaign signs be a certain size, be erected earlier than 60 days prior to a primary or general election, and that the campaign signs be removed within 10 days after the election to which the sign pertains. § 40.E.2.c. Clearly, such a limited restriction on *these types* of political signs furthers the significant government interest in aesthetics. However, the ordinance does not, and cannot, preclude the dissemination of political ideas.

 Appellees also contend that, because certain signs are given preference in terms of their limited size, height and number over other signs, the ordinance cannot be justified without reference to content. Although we acknowledge that preference is given to certain types of signs, *see* § 40.E.2.d. Code,[5] we are satisfied that these exceptions do not remove the ordinance from a legitimate time, place and manner restriction. *See John Donnelly & Sons v. Campbell*, 639 F.2d 6 (1st Cir. 1980), *aff'd*, 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). The ordinance before us does not prohibit the content of signs as did the ordinances involved in the cases cited by appellees to support their arguments. *See, e.g., Metromedia, Inc. v. City of San Diego, supra* (San Diego's general ban on signs carrying noncommercial advertising); *Central Hudson Gas v. Public Service Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (complete ban on electric utility companies from advertising to promote the use of electricity); *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85,

---

4. Because the sign ordinance does not limit what a religious organization may maintain on its signs, the ordinance does not abridge the free exercise of religious beliefs in violation of N.M.Const., Art II, § 11.

5. Certain signs are permitted to be erected in all zones.

97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (prohibition on the posting of "For Sale" and "Sold" signs).

Since the sign ordinance does not foreclose any channels of communication, we need not consider whether ample alternative channels of communication are provided for in the ordinance.

 We hold that the sign ordinance is a legitimate time, place and manner restriction on speech.

## V.

 Next, appellees have argued that the sign ordinance is an unconstitutional *ex post facto* law since it imposes civil and criminal penalties for the maintenance of nonconforming signs which had been lawfully erected prior to 1976. This contention is without merit. The ordinance does not penalize a sign owner or user for the erection or maintenance of signs before the effective date of the ordinance. The ordinance imposes penalties for the maintenance of nonconforming signs after the effective date of the ordinance and, as applied to preexisting signs, after the five-year amortization period has expired. As such, the sign ordinance is not an unconstitutional *ex post facto* law. *See Samuels v. McCurdy,* 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568 (1925). Government has the right to declare previously lawful activity to be unlawful. *Ghaster Properties, Inc. v. Preston,* 176 Ohio St. 425, 200 N.E.2d 328 (1964).

## VI.

Finally, the district court held that, insofar as the sign ordinance was an unreasonable exercise of the police power, the ordinance impaired the obligation of contracts in violation of U.S.Const. art. I, § 10, and N.M.Const., Art. II, § 19. Relevant to this holding was the fact that Lennox Investments, Inc., a licensed contractor, had entered into several contracts to perform maintenance on signs which now are nonconforming and must be removed. As a result, the contracts would be terminated.

 We disagree with the district court's holding. Existing contracts are subject to the legitimate exercise of police power. *Green v. Town of Gallup,* 46 N.M. 71, 120 P.2d 619 (1941). We have already held that the sign ordinance is a legitimate exercise of the City's police power. Thus, the ordinance does not unconstitutionally impair the obligation of contract. *Art Neon, supra.*

The district court is reversed, and this cause is remanded for a hearing not inconsistent with this opinion and for consideration of the remaining issues not raised on appeal.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE, J., concur.

FEDERICI and RIORDAN, JJ., concurring in Parts I, II & IV, and dissenting in Parts III, V & VI.

FEDERICI and RIORDAN, Justices, concurring in part and dissenting in part.

We concur with Justice Sosa's opinion insofar as it holds that the city properly preserved the issues for appeal, that the city may enact a sign ordinance strictly for aesthetic purposes alone and that the City of Albuquerque's sign ordinance, Albuquerque, N.M., Rev.Ordinances, ch. 7, art. XIV, 1974 (1980) (Ordinance), does not violate free speech. However, we cannot agree with the remainder of the opinion.

In 1975, the City of Albuquerque adopted a sign Ordinance which specified specific requirements for outdoor advertising signs in Albuquerque. Under the Ordinance, all existing, nonconforming signs were required to be brought into compliance within *five* years. Although existing signs were erected by the owners in compliance with the previous ordinance, under the new Ordinance, the existing signs are to be modified or removed at the owner's expense. No compensation is allowed for the owner's expenditures in removing, replacing or modifying the signs to bring them into compliance with the new Ordinance. According to the affidavits filed in the district court, numerous businesses in Albuquerque will be

*required* to remove, replace or modify existing signs at a great expense. For example, in affidavits filed with the district court, Octopus Car Wash, Inc. alleges that the cost of removing nonconforming signs on all of their business locations will be approximately $40,000.00. The cost to replace these signs to conform to the Ordinance will be an additional $50,000.00. The Four Seasons Motor Inn, Inc. alleges that it will cost $10,000.00 to remove the one nonconforming sign and approximately $200,000.00 to replace the sign.

If a business does not remove or modify its sign, then Section 46(A)(5) of the Ordinance provides that:

The Zoning Enforcement Officer *shall* order the removal of any sign or violating portion thereof which is erected or maintained in violation of this ordinance. Ten days notice in writing shall be given to the owner of such sign, or of the structure or premises on which such sign is located, to remove the sign or to bring it into compliance with this ordinance. Upon failure to remove the sign or to comply with this notice, the Zoning Enforcement Officer shall have the sign removed. Any cost of removal incurred by the City shall be assessed to the owner of the property on which such sign is located and may be collected in the manner of ordinary debt or in the manner of taxes, and such charge shall be a lien on the property. [Emphasis added.]

The City contends that the five year "grace" period given to the sign owners to bring their signs into compliance with the Ordinance, also referred to as an "amortization" period, is constitutional; therefore, there would not be a "taking" that would require the City to compensate the owners for their signs. The issue of whether an amortization period may be used to eliminate nonconforming uses is one of first impression in New Mexico.

*Taking of Property*

Property, in the legal sense, is a group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. *Agins v. City of*

*Tiburon*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d 25 (1979), *aff'd*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). The Fifth Amendment to the United States Constitution states that:

No person shall be * * * deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use, without just compensation.

New Mexico Constitution, Article II, Section 20 embodies this same principle.

Private property shall not be taken or damaged for public use without just compensation.

An example of a taking situation existed in *Pete v. United States*, 531 F.2d 1018 (Ct.Cl.1976). The United States government had enacted legislation prohibiting large barges from being operated for commercial use in the waters of a wilderness area in eastern Minnesota. The barges were too large to be moved to another location for use. The owner of the barges filed suit for the "taking" of the barges by inverse condemnation. The court held that when the effect of a governmental regulation on a citizen's property is so pervasive that the property is greatly depreciated in value or that the owner's right to use the property is substantially interfered with, the citizen is entitled to compensation. Citing Justice Holmes, the court stated that:

The general rule at least, is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking * * *. We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the damage.

*Id.* at 1034 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922)). In *Stuckey's Stores, Inc. v. O'Cheskey*, 93 N.M. 312, 600 P.2d 258 (1979), *appeal dismissed*, 446 U.S. 930, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980), in accordance with New Mexico Highway Beautification Act, §§ 67–12–1 through 67–12–14, N.M.S.A.1978, sign owners lost their

signs without compensation only if erected after 1966, the date of the Act, or if the sign owners failed to keep his permit current. Therefore, there could be no taking of existing signs erected before 1966 *without compensation to the sign owner* as long as the sign owner kept the permit current.

However, as the majority states, a reasonable regulation on the use of property is not considered a taking. The diminution in the value of property without compensating the owner is valid. Zoning action which merely decreases the market value of the property does not violate the constitution. *See Miller v. City of Albuquerque*, 89 N.M. 503, 554 P.2d 665 (1976). While acknowledging the power of government to preserve and improve the quality of life for its citizens through regulations of the use of private lands, we cannot agree to the city's position that this can be accomplished through the uncompensated destruction of private property rights. The Albuquerque sign Ordinance is not merely decreasing the market value of the signs. As the affidavits state, the signs will have to be replaced to be in compliance; therefore, their value is being destroyed which amounts to a "taking".

*Amortization*

The city claims that since a five year "grace" period is allowed under the Ordinance, the loss to the sign owners can be spread out and any expenses incurred can be recovered by the owners in the form of a tax deduction or write off.

First of all, this argument reinforces the claims of the sign owners that there is a "taking". If there was no "taking" then there would be no damages; therefore, no amortization would be required.

Second, we do recognize that a number of states have approved the concept of amortization that was adopted by the city; however, we are not willing to join those states that have approved of this method of avoiding the payment of just compensation for a "taking" by the government. As the court, although allowing amortization, recognized in *Art Neon Co. v. City and County of Denver*, 488 F.2d 118 (10th Cir. 1973), *cert.*

*denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), there is some loss ·that does fall upon a sign owner even when an amortization period is included in an ordinance.

*The 1981 Legislation*

The public policy of this state is expressed by the legislature's enactment of Section 42A–1–34, N.M.S.A.1978 (Repl. Pamp.1981), which provides:

No municipal, county or local zoning authority or any other political subdivision of the state shall remove or cause to be removed any lawfully erected and maintained advertising structure without paying just compensation. As used in this act, 'advertising structure' means and includes any outdoor sign, display, figure, painting, poster, billboard or similar thing designed, intended or used to advertise or inform the public of goods or services sold either on or off the premises where the advertising structure is located.

If the majority opinion means that this statute will not control any further actions by the city to enforce their sign Ordinance, we disagree. Our constitution states in N.M.Const., Art. IV, § 34, "No act of the legislature shall affect the right or remedy of either party... in any pending case." At this time, there is no pending action to remove signs or require compliance. The pending action is to enjoin the city from enforcing the sign ordinance and to declare it unconstitutional. Therefore, the statute will apply to any action taken by the city in the future to enforce the Ordinance.

In our view, the enforcement of the sign Ordinance does involve an unconstitutional "taking" of private property for which payment of just compensation is required.