902 P.2d 550

The ESTATE AND HEIRS OF Isabel SANCHEZ, deceased, d/b/a Los Arboles Land Company, Petitioners–Respondents,

v.

COUNTY OF BERNALILLO, a body politic, and its commissioners, Patrick J. Padilla, Marion M. Cottrell, Orlando Vigil, Lenton Malry, and Patricia H. Cassidy, Respondents–Petitioners.

No. 22709.

Supreme Court of New Mexico.

Aug. 31, 1995.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Timothy R. Van Valen, George R. McFall, Albuquerque, for petitioners.

Oman, Gentry & Yntema, P.A., Hessel E. Yntema, III, Albuquerque, for respondents.

## OPINION

RANSOM, Justice.

1. The Estate of Isabel Sanchez sought damages for inverse condemnation after Bernalillo County denied the Estate's application for a special use permit to develop a mobile home park. The district court entered summary judgment in favor of the County and its commissioners. The Estate appealed and the Court of Appeals reversed. We issued a writ of certiorari to the Court of Appeals. Because the facts neither support an inference that the Estate has lost all or substantially all beneficial use of the property nor an inference that the Estate suffered an injury

different from that suffered by the general public, we reverse the Court of Appeals.

2. *Facts and proceedings.* In 1992 the Estate filed with the County an application for a special use permit to develop a 179-unit mobile home park on property owned by the Estate. The County denied the application, and the Estate brought suit, first seeking to reverse the denial of the permit and, second, seeking damages for inverse condemnation. In November 1992 the Estate filed a motion for summary judgment on the first claim, arguing that the County lacked zoning authority over the subject property.

3. In February 1993 the district court granted summary judgment to the Estate. The County appealed to the Court of Appeals. In an unpublished decision the Court of Appeals affirmed the summary judgment on grounds that the County had not preserved the argument that it had zoning authority over the subject property, stating:

> In our calendar notice, we instructed the County to inform this Court of how the specific [statutory "savings clause"] argument concerning zoning authority that the County sought to raise on appeal was preserved below. The document filed by the County in response to the calendar notice does not address the preservation issue. Therefore, we affirm on this issue due to the County's failure to address the issue in its response. See *State v. Mondragon,* 107 N.M. 421, 423, 759 P.2d 1003, 1005 (Ct. App.) ("party responding to a summary calendar notice must come forward and specifically point out errors of law and fact"), *cert. denied,* 107 N.M. 267, 755 P.2d 605 (1988).

The County sought a writ of certiorari from this Court, which was denied. The case was then remanded to the district court.

4. On remand the Estate moved for summary judgment on the inverse condemnation claim, arguing that the unauthorized exercise of zoning authority constituted a taking of the property. In response, the County filed a motion for reconsideration of the court's determination that the County did not have zoning authority over the subject property and filed its own motion for summary judgment on the inverse condemnation claim, ar-

guing that the Estate could not recover inverse condemnation damages because it had not been denied all beneficial use of the property. At a hearing on the motions the Estate conceded that the County had not denied it all beneficial use of the property. The district court denied the Estate's motion for summary judgment and the County's motion for reconsideration but granted the County's motion for summary judgment.

5. The Estate appealed to the Court of Appeals from the summary judgment, and the County cross-appealed the denial of its motion to reconsider. The Court of Appeals reversed the district court's denial of the motion for reconsideration, holding that under *Edwards v. Board of County Commissioners,* 119 N.M. 114, 121, 888 P.2d 996, 1003 (Ct.App.1994), the County had zoning authority over the Estate's property. The Court also reversed the summary judgment on the inverse condemnation claim in an effort "to restore the parties as best we can to the position that they would have been in if [the Estate's] motion for summary judgment on the [unauthorized exercise of zoning authority] claim had been denied." The Court expressed no opinion on the merits of the inverse condemnation claim.

6. The Estate filed a petition for a writ of certiorari to this Court, arguing that *Edwards* should not apply to it because of "the law of the case" doctrine. We denied that petition and do not address that issue. The County also filed a petition for a writ of certiorari, arguing that the inverse condemnation claim must fail and that the Court of Appeals erred by not reaching the merits of that claim. We granted that petition and now address only whether summary judgment in favor of the County was proper on the inverse condemnation claim.

7. *To constitute a taking, a regulation must deprive a property owner of all or substantially all beneficial use of the subject property.* The Estate concedes that the zoning regulation in this case did not deprive it of all or substantially all beneficial use of the subject property. It argues, however, that the County's imposition of the property use restrictions in question was not reasonably

related to a proper purpose and was, therefore, a taking. For support, the Estate cites *Temple Baptist Church, Inc. v. City of Albuquerque,* 98 N.M. 138, 646 P.2d 565 (1982).

The general rule is that a regulation which imposes a reasonable restriction on the use of private property will not constitute a "taking" of that property if the regulation is (1) reasonably related to a proper purpose and (2) does not unreasonably deprive the property owner of all, or substantially all, of the beneficial use of his property.

*Id.* at 144–45, 646 P.2d at 571–72. A similar rule was stated in *Stuckey's Stores, Inc. v. O'Cheskey,* 93 N.M. 312, 320–21, 600 P.2d 258, 266–67 (1979) (quoting *Newman Signs, Inc. v. Hjelle,* 268 N.W.2d 741, 755–56 (N.D. 1978), *appeal dismissed,* 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979)).

8. The Estate argues that under *Temple Baptist* a regulation restricting the use of private property is a taking unless it is *both* reasonably related to a proper purpose and does not deprive the owner of all beneficial use of the subject property. Thus it contends that even though it cannot prove it was deprived of all beneficial use of the property, the County's alleged unlawful exercise of its police power was per se not reasonably related to a proper purpose and was a taking. The Estate contends that, even if within the County's zoning authority, it is yet to be decided whether the zoning regulation is otherwise reasonably related to a proper purpose, and therefore summary judgment on the inverse condemnation claim is inappropriate.

■ 9. The Estate assumes that the converse of a true proposition must also be true. The Estate specifically argues "[t]hat a government regulation that is not reasonably related to a proper purpose of that government constitutes a 'taking' requiring payment of just compensation under Article II, Section 20 of the New Mexico Constitution and Section 42A–1–29, NMSA 1978, as interpreted by *Temple Baptist.*" While it is true that all regulations reasonably related to a proper purpose which do not deprive the property owner of all beneficial use are not takings, it is not necessarily true that regulations which are not reasonably related to a proper purpose are takings.

■ 10. In *Miller v. City of Albuquerque,* 89 N.M. 503, 505, 554 P.2d 665, 667 (1976), this Court expressly held that "[o]nly if the governmental regulation deprives the owner of all beneficial use of his property will the action be unconstitutional." This rule was reiterated verbatim in *Aragon & McCoy v. Albuquerque National Bank,* 99 N.M. 420, 424, 659 P.2d 306, 310 (1983), and continues to be the rule in this jurisdiction. Neither *Miller* nor *Aragon & McCoy* indicates that government action not reasonably related to a proper purpose is sufficient to constitute a taking in the absence of a deprivation of all beneficial use of the subject property. In both cases, however, the Court either implicitly or expressly found that the regulation at issue was a valid exercise of police power. Thus, these cases do not fully answer the question.

11. The term "property" in a constitutional sense refers not to the physical object itself but to a group of rights granted to the property owner, including the right to use and enjoyment of the object. *Burrows v. City of Keene,* 121 N.H. 590, 432 A.2d 15, 19 (1981) (quoting *United States v. General Motors Corp.,* 323 U.S. 373, 377–78, 65 S.Ct. 357, 359–60, 89 L.Ed. 311 (1945)). The federal Takings Clause and complimentary state constitutional provisions were created to protect these property rights and to prevent the government from appropriating private property for public use and enjoyment without just compensation. This protection, however, does not entitle an owner to use property for all economically viable purposes, and governmental actions imposing an incidental economic loss will be upheld. *See Miller,* 89 N.M. at 505, 554 P.2d at 667. Thus the right protected by the Takings Clause is a right to substantial use and enjoyment of property. Because it does not significantly impact the use and enjoyment of the subject property, a regulation not reasonably related to a proper purpose that does not deprive a property owner of all or substantially all beneficial use of property simply does not implicate an interest protected by the Takings Clause. Although a property owner may have a right to seek redress for an unlawful regulation, the method of redress is not a takings action.

Because the Estate concedes it cannot prove it has lost all beneficial use of its property, its claim that the regulation itself was a taking must fail, even though the issue whether the regulation was reasonably related to a proper purpose has not been adjudicated.

12. The Estate cites cases from other jurisdictions to support its position that the government is liable for damages caused by a regulation not reasonably related to a proper purpose. In these cases, however, each court that found a taking had occurred also found that the property owner had been denied, either temporarily or permanently, all or substantially all beneficial use of the property. *See, e.g., Corrigan v. City of Scottsdale,* 149 Ariz. 553, 720 P.2d 528, 539 (App. 1985), *aff'd in part and vacated on other grounds by,* 149 Ariz. 538, 720 P.2d 513 (1986) (In Banc); *Burrows,* 432 A.2d at 21; *City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tex.1978). The Estate has not directed us to, nor have we found, any case in which a property owner was awarded damages for a taking based solely on the fact that the governmental action was not reasonably related to a proper purpose. We have, in fact, found cases holding the converse to be true. *See, e.g., Del Oro Hills v. City of Oceanside,* 31 Cal.App.4th 1060, 37 Cal.Rptr.2d 677 (1995). Therefore, the Estate's argument that under federal and state takings provisions it is entitled to inverse condemnation damages for the economic harm caused by the County's zoning regulation must fail.

13. We note that the County argues in the alternative that the Estate's inverse condemnation claim must fail regardless of the deprivation of use issue. Citing for support *United States v. North American Transportation & Trading Co.,* 253 U.S. 330, 333–34, 40 S.Ct. 518, 519–20, 64 L.Ed. 935 (1920), the County argues that "[a]ction without statutory authority is not governmental action and therefore cannot constitute [a claim for] inverse condemnation or a taking." Although *North American Transportation* arguably supports that proposition, we need not address this argument because of our holding that to support a takings claim, a property owner must prove a deprivation of all or substantially all beneficial use of the subject property.

14. *For inverse condemnation to be based upon a "damage," a property owner must suffer some compensable injury that is not suffered by the public in general.* Unlike the United States Constitution, the New Mexico Constitution mandates compensation both when a governmental action results in a taking of property and when such action damages property. *Compare* U.S. Const. amend. V (property "taken" for public use) *with* N.M. Const. art. II, § 20 (property "taken or damaged" for public use). The Estate argues that *Board of County Commissioners v. Harris,* 69 N.M. 315, 366 P.2d 710 (1961), supports an award of consequential damages even when governmental action has not resulted in a denial of all beneficial use.

15. In *Harris* a trial court determined that property owners were not entitled to damages after the government had lowered the grade of an abutting highway by twenty inches, making ingress to and egress from the subject property very difficult. *Id.* at 316–17, 366 P.2d at 711–12. This Court reversed that determination, holding that the property owners were entitled to damages because the government's highway improvement had diminished substantially the use and value of the land. *Id.* at 318, 366 P.2d at 712. *Harris* was the first case in which this Court addressed whether a property owner should be compensated when property has been damaged but not taken. *See also* SCRA 1986, 13–710 (Repl.Pamp.1991). As recognized by the directions for use of this jury instruction, "[i]nstances of liability [when no property is taken] are rare." *Id.*

16. This Court clarified *Harris* in *Public Service Co. of New Mexico v. Catron,* 98 N.M. 134, 136, 646 P.2d 561, 563 (1982). In *Catron* we stated that "in order to be compensated [for consequential damages], the damage to the property must affect some right or interest which the landowner enjoys and which is not shared or enjoyed by the public generally." *Id.* This harm to the property owner "must be different in kind, not merely in degree, from that suffered by the public in general." *Id.* In this case the zoning regulation in question affects an interest shared or enjoyed by the public general-

ly. While the Estate may be more immediately affected by the regulation, the use restriction is of general application and is thus a damage of the same kind as that suffered by the public in general. Because the Estate has not shown how it has suffered any special harm not suffered by the public in general, it cannot make a claim for damages under Article II, Section 20.

17. *Other methods of redress.* The Court of Appeals opinion remanded this case to the district court "to consider whether there remain any alternative legal and factual grounds in support of [the Estate's] first claim." The County has not requested review of this part of the Court of Appeals' ruling. We therefore will not disturb it.

18. *Conclusion.* We reverse the Court of Appeals on the inverse condemnation claim and direct the district court to dismiss that claim. We remand this case for consideration of the Estate's claim to other remedies to which it may be entitled if it can show that the County's action was improper.

19. **IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI, J., concur.