# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-004**

**Filing Date: October 1, 2020**

**No. A-1-CA-34784**

**PREMIER TRUST OF NEVADA, INC.,
as Trustee of MURTAGH NEVADA
TRUST, and MURTAGH NEVADA,
LLC, a Nevada limited liability
company,**

        Petitioners-Appellants,

v.

**CITY OF ALBUQUERQUE, a New
Mexico municipal corporation, and
ALBUQUERQUE CITY COUNCIL,
as its final voting authority,**

        Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Alan M. Malott, District Judge**

Released for Publication March 9, 2021.

Hamm French, PLLC
Jason B. Hamm
Midland, TX

for Appellants

Esteban A. Aguilar, Jr., City Attorney
Kevin A. Morrow, Assistant City Attorney
Albuquerque, NM

for Appellees

<strong>OPINION</strong>

**ATTREP, Judge.**

**{1}**     Premier Trust of Nevada, Inc., as trustee of Murtagh Nevada Trust, and Murtagh Nevada, LLC (collectively, Premier) sued the City of Albuquerque (the City) for takings and contract claims relating to a change in the City's impact fee ordinance. Generally speaking, impact fees are assessed against developers of new construction. These assessments may be fulfilled by, among other ways, purchasing excess impact fee credits from excess credit holders, like Premier. Due to the changed city ordinance, fewer impact fees were assessed on new construction, the result of which, Premier alleges, was a diminished demand for its excess credits and a corresponding decrease in value of those credits. This, Premier asserts, amounted to a taking of private property without just compensation and gave rise to various contract claims against the City. On the City's motion, the district court dismissed Premier's claims for failure to state a claim upon which relief can be granted. For the reasons that follow, we affirm.

## BACKGROUND

**{2}**     We derive our background from the well-pleaded facts contained in Premier's first amended complaint, which we take as true, and our independent review of the city ordinances at issue in this matter. *See Env't Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 6, 131 N.M. 450, 38 P.3d 891 ("In reviewing a motion to dismiss for failure to state a claim under Rule 1-012(B)(6) NMRA . . . , we take the well-pleaded facts alleged in the complaint as true and test the legal sufficiency of the claims."); *see also City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 21, 147 N.M. 693, 228 P.3d 477 ("[M]unicipal ordinances are properly categorized as law which may be judicially noticed by all courts in New Mexico."). To the extent Premier's allegations are legal constructions of the ordinances, we disregard them—as we do any unwarranted deductions of fact. *See C & H Constr. & Paving, Inc. v. Found. Reserve Ins. Co.*, 1973-NMSC-076, ¶ 9, 85 N.M. 374, 512 P.2d 947 ("For purposes of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." (internal quotation marks and citation omitted)).

**{3}**     Consistent with the Development Fees Act (the Act), NMSA 1978, §§ 5-8-1 to -43 (1993, as amended through 2003), the City in 2004 adopted a series of ordinances that took effect in 2005 (collectively, the 2005 Ordinance). The 2005 Ordinance permitted the City to assess impact fees against developers in order to offset the costs of four categories of public infrastructure improvements: (1) public safety facilities, Albuquerque, N.M., Ordinance 2004-051 (Nov. 15, 2004); (2) roadway facilities, Albuquerque, N.M., Ordinance 2004-052 (Nov. 15, 2004); (3) drainage facilities, Albuquerque, N.M., Ordinance 2004-053 (Nov. 15, 2004); and (4) park, recreation, trails, and open space facilities, Albuquerque, N.M., Ordinance 2004-054 (Nov. 15, 2004). The rates the City charged for impact fees, included in schedules attached to the 2005 Ordinance, were based on various land use assumptions and depended on the category of improvement for which the fee was being assessed and the area of Albuquerque (the service area) in which the development was to occur. The 2005 Ordinance provided that the land use assumptions and impact fees would be reviewed

and, if necessary, updated every five years. *See, e.g.*, Ordinance 2004-051, §§ 9(C), 26.

**{4}**     In order to fulfill the City's impact fee assessments, a developer could pay money, construct improvements, or convey property in exchange for impact fee credits. *See, e.g.*, *id.* § 21(A), (D). If the value of the credits exceeded the amount of impact fees due, the 2005 Ordinance provided that the developer would receive excess credits. *See, e.g.*, *id.* § 21(J)(2). The developer could then use these excess credits to pay for impact fees later assessed by the City, within the same category of improvements and service area, or seek reimbursement under certain conditions. *See, e.g.*, *id.* § 21(J)(6)(a), (c). A developer could also sell or otherwise assign the excess credits to another entity, subject to the same rights and restrictions. *See, e.g.*, *id.* § 21(J)(6)(b). If not used within seven years of issuance, the excess credits would expire. *See, e.g.*, *id.* § 21(J)(7)(f).

**{5}**     Between 2007 and 2011, the City entered into various written agreements with The Trails LLC (Trails) and Curb, Inc. (Curb) (collectively, the Developers), in which the City conveyed over $1.7 million in excess credits to the Developers in exchange for public infrastructure improvements or real property. Premier ultimately obtained these excess credits either directly from the Developers or by way of an intermediary. In addition, the City and Trails entered into a settlement agreement on November 28, 2012, in which the City agreed to convey to Trails over $600,000 worth of impact fee credits. Trails later assigned these credits to Premier sometime in 2013. In sum, the City conveyed over $2.3 million worth of impact fee credits to the Developers, with Premier ultimately obtaining these credits (either directly or indirectly) from the Developers. According to Premier, it regularly sold or assigned these excess credits for value.

**{6}**     On November 30, 2012, the City repealed the 2005 Ordinance and replaced it with another ordinance (the 2012 Ordinance). *See* Albuquerque, N.M., Rev. Ordinances ch. 14, art. 19 (ARO), §§ 14-19-1 to -24, -98 to -99 (2012). In the 2012 Ordinance, excess credit holders, like Premier, retained their rights to transfer or sell the excess credits, apply the excess credits to offset impact fees assessed on new development, and request reimbursement from the City for all or part of the amount of the excess credits. *See id.* § 14-19-19(J)(6)(a)-(c). Further, although not mentioned by Premier in its amended complaint, the 2012 Ordinance extended the amount of time in which excess credits issued pursuant to the 2005 Ordinance could be used or redeemed from seven years after issuance to fifteen years after adoption of the 2012 Ordinance. *Id.* § 14-19-19(J)(7)(f). Thus, Premier's excess credits at issue here are valid until at least sometime in late 2027—i.e., fifteen years after adoption of the 2012 Ordinance. The 2012 Ordinance also, by and large, geographically expanded the service areas applicable to each category of improvement and provided that holders of excess credits generated within the old, smaller service areas could use those credits within the new, geographically-expanded service areas.[1] *See id.* § 14-19-10 (establishing new service

---

[1] As an example, the 2005 Ordinance established eight service areas governing impact fees imposed for roadway facilities. *See* Ordinance 2004-052, app. A. In contrast, the 2012 Ordinance established just one service area—"encompassing all of the land within the city limits, with the exclusion of the area within the

areas); *id.* § 14-19-19(J)(3) (providing that "credits can be applied within new service areas if the improvement generating that credit is within that new service area").

{7}    But the change of which Premier complains is the 2012 Ordinance's reduction of the impact fee rates assessed on new development going forward. *Compare, e.g.,* Ordinance 2004-052, app. B, *with* ARO, § 14-19-13(A). This rate reduction was combined with an additional, temporary rate cut set out in a phase-in schedule. The phase-in schedule assessed impact fees at twenty percent of the rates set by the 2012 Ordinance in 2013, increasing to forty percent in 2014, sixty percent in 2015, eighty percent in 2016, and one hundred percent in 2017 and onward. *See* ARO, § 14-19-13. As an example, the amended complaint alleges that, prior to the 2012 Ordinance, a roadway impact fee was due in the amount of $1,800 per permit. Premier then alleges that, after enactment of the 2012 Ordinance, this same fee was due in the amount of $279 per permit in 2013, and $559 in 2014. Consistent with the allegations and the 2012 Ordinance, the current roadway impact fee would be approximately $1,395, equating to a twenty-two and one-half percent reduction of the rate set by the 2005 Ordinance.

{8}    Because fewer impact fees were assessed under the reduced impact fee rates in the 2012 Ordinance, the result of the 2012 Ordinance, according to Premier, has been a diminished demand for excess credits and a substantial reduction in the value of the credits it holds. Premier, however, does not allege that it has been unable to sell or assign for value excess credits since enactment of the 2012 Ordinance; rather it alleges it has "sold or assigned for value substantially less impact fee credits" since the 2012 Ordinance took effect.[2] As of the filing of its amended complaint, Premier retained approximately $1.5 million worth of excess credits.

{9}    Premier filed suit against the City, asserting that the 2012 Ordinance constitutes an unlawful taking under the New Mexico Takings Clause. N.M. Const. art. II, § 20. Premier also brought two contract claims—one based on promissory estoppel and the other on illusory promise—as well as a claim for a refund of the excess credits it holds.[3] The City moved to dismiss the complaint on the ground that Premier failed to state a claim upon which relief can be granted. *See* Rule 1-012(B)(6). In a memorandum opinion and order, the district court granted the motion in its entirety. Premier abandons

---

Mesa del Sol development"—for this category of impact fees. ARO, § 14-19-10(A). This means a holder of excess credits for roadway impact fees generated under the 2005 Ordinance within, for instance, the Far Northeast Heights service area would, after adoption of the 2012 Ordinance, be able to use its excess credits throughout the entirety of Albuquerque, save the Mesa del Sol development. It appears that only the service areas for drainage facilities did not change. *Compare* Ordinance 2004-053, app. B (naming five service areas), *with* ARO, § 14-19-13(B) (naming these same five service areas).

2Notwithstanding this, Premier goes on to allege that the 2012 Ordinance has rendered its excess credits "completely worthless." Based on our review of the facts alleged in the amended complaint, and the ordinances of which we take judicial notice, we consider this contention an unwarranted deduction of fact that we do not accept as true. *See C & H Constr. & Paving*, 1973-NMSC-076, ¶ 9 ("[U]nwarranted deductions of fact are not admitted." (internal quotation marks and citation omitted)).

3In its original complaint, Premier also challenged the validity of the 2012 Ordinance. The district court dismissed this claim, and Premier has not appealed that decision.

its promissory estoppel and refund claims on appeal, but challenges the district court's dismissal of its takings and illusory promise claims. We affirm.

## DISCUSSION

**{10}**    Our review of the district court's dismissal of Premier's amended complaint is de novo. *Env't Control*, 2002-NMCA-003, ¶ 6. In undertaking this review, we "accept[] all well-pled factual allegations as true and resolv[e] all doubts in favor of the sufficiency of the complaint." *Id.* At the same time, we reiterate that it is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred. *See, e.g.*, *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("[The a]ppellant must affirmatively demonstrate its assertion of error."); *see also, e.g.*, *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("This Court requires that the parties adequately brief all appellate issues to include an argument, the standard of review, and citations to authorities for each issue presented. We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

## I.    Takings

**{11}**    The New Mexico Takings Clause provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." N.M. Const. art. II, § 20. Premier brought its takings claim pursuant to this clause and the inverse condemnation statute. *See* NMSA 1978, § 42A-1-29 (1983) ("A person authorized to exercise the right of eminent domain who has taken or damaged . . . any property for public use without making just compensation . . . is liable to the condemnee, or any subsequent grantee thereof[.]"). Premier styles its takings claim as a regulatory takings claim, contending that the 2012 Ordinance, and in particular the reduction of the impact fee rates, substantially devalued its excess credits. *See Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 18, 302 P.3d 405 ("A regulatory taking . . . occurs when the government regulates the use of [property], but does not condemn it, i.e., take title to the property.").

**{12}**    In the briefing below on the City's motion to dismiss, both parties principally cited federal case law, with Premier arguing, inter alia, that dismissal was improper under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), a seminal United States Supreme Court regulatory takings case. The district court disagreed, making two central holdings: (1) Premier had not alleged a property right protected by the Takings Clause; and (2) even so, Premier failed to allege a viable takings claim under New Mexico regulatory takings law.

**{13}**    On appeal, Premier, by and large, does not address the district court's holdings based on New Mexico law. Premier, instead, persists that *Penn Central* applies and that, if applied, would have compelled the denial of the City's motion to dismiss. Because Premier chiefly rests its regulatory takings argument on *Penn Central*, Premier

fails in any meaningful way to explain if or how the district court erred in its application of New Mexico law.[4] We nonetheless have reviewed the district court's opinion and undertaken substantial research on our own. Based on this, we detect no error in the district court's dismissal of Premier's takings claim. We address each of the district court's rulings in turn.

## A.        Premier Failed to Allege a Protected Property Right

{14}    The district court held that, while Premier has a protected property right in its excess credits, this right does not extend to favorable market conditions. As acknowledged by Premier, this presents a threshold matter—that is, if a claimant has no property right protected by the Takings Clause, then its takings claim necessarily fails. *See Leigh v. Vill. of Los Lunas*, 2005-NMCA-025, ¶¶ 5-8, 137 N.M. 119, 108 P.3d 525 (determining as an initial matter that restrictive covenants "constitute property rights . . . protected by [the Takings Clause]"); *Env't Control*, 2002-NMCA-003, ¶¶ 8-11 (examining as a threshold matter whether the right to continue business under the circumstances "is considered property for purposes of constitutional analysis"); *City of Albuquerque v. Westland Dev. Co.*, 1995-NMCA-136, ¶ 11, 121 N.M. 144, 909 P.2d 25 ("[I]f the activity violates no property right of the owner, then the government owes the owner no compensation for engaging in the activity.").

{15}    On appeal, Premier tersely asserts that the only relevant inquiry in this regard is the fact that Premier had a property right in the credits—an allegation accepted by the district court.[5] This, however, misses the district court's pertinent holding. Although the district court recognized Premier's right in the credits, the court looked to the particular allegations in determining what property right formed the basis of Premier's complaint. *See Estate & Heirs of Sanchez v. Cty. of Bernalillo*, 1995-NMSC-058, ¶ 11, 120 N.M. 395, 902 P.2d 550 ("The term 'property' in a constitutional sense refers not to the physical object itself but to a group of rights granted to the property owner, including the right to use and enjoyment of the object."). After concluding that Premier "retained all the 'sticks' in the proverbial 'bundle of rights' that is commonly characterized as property . . . includ[ing] the right to use the credits, exclude others, and to sell, convey and assign the credits," the district court determined that Premier's core contention was that the Takings Clause protects a right to a favorable market for its excess credits. In view of this, the district court concluded "that the bundle of property rights" does not include "a constitutional guarantee that property will maintain its value, or more precisely, that the market for particular property will remain favorable[.]" Upon review, we discern no error in this conclusion. *See Leigh*, 2005-NMCA-025, ¶ 5 ("Whether the

---

4Premier does contend that the district court's reliance on *Santa Fe Pacific Trust, Inc. v. City of Albuquerque* (*SFPT*), 2014-NMCA-093, 335 P.3d 232, was in error because, as a pre-condemnation publicity suit, *SFPT* is inapposite. Although the district court cited *SFPT* as the latest New Mexico takings case at the time and pulled some general principles from that case, the court went on to analyze Premier's takings claim using our New Mexico regulatory takings test. As such, we find no error in the district court's reference to *SFPT*.

5We assume without deciding for purposes of our analysis that Premier's excess credits constitute a property right protected by the Takings Clause.

taking of [an alleged property right] falls within the constitution's [Takings Clause] mandate presents a purely legal issue.").

**{16}** As an initial matter, Premier cites no cases, nor have we found any, in which a property owner has a right to certain static market conditions. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). And to the contrary, there are New Mexico cases suggesting the opposite. *Cf. New Mexicans for Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 53, 138 N.M. 785, 126 P.3d 1149 (observing that a "utility had no vested property right to a particular regulatory rate and even if it did, its contracts were clearly subject to additional regulation" (citing *E. Spire Commc'ns, Inc. v. Baca*, 269 F. Supp. 2d 1310, 1325-26 (D.N.M. 2003), *aff'd sub nom. E. Spire Commc'ns v. N.M. Pub. Regul. Comm'n*, 392 F.3d 1204 (10th Cir. 2004))); *Westland Dev.*, 1995-NMCA-136, ¶ 13 (observing that an "owner of land abutting highway has no vested interest in flow of traffic past his premises" (citing *State ex rel. State Highway Comm'n v. Silva*, 1962-NMSC-172, ¶ 8, 71 N.M. 350, 378 P.2d 595)).

**{17}** Further, upon examination of relevant state and local laws, it is apparent that neither the Act nor the 2005 Ordinance, as Premier seems to suggest, conferred any right to excess credit holders to sell credits at the rates set out in the 2005 impact fee schedules. *See Bartlett v. Cameron*, 2014-NMSC-002, ¶ 14, 316 P.3d 889 (looking to "state law, the legal authority that defines the scope of property rights" to determine whether there is a right protected by the Constitution and due process); *Leigh*, 2005-NMCA-025, ¶¶ 5-8 (looking to state law to determine whether restrictive covenants "constitute property rights . . . protected by [the Takings Clause]"). Indeed, the Act and the 2005 Ordinance mandated the periodic review of the impact fee rates and reserved to the City the right to change those rates. *See, e.g.*, §§ 5-8-30, -35; Ordinance 2004-051, §§ 9(C), 26. Based on this, we presume the City did not intend to create any property right or interest in the 2005 impact fee rate schedules. *See Bartlett*, 2014-NMSC-002, ¶ 19 ("Unless we are satisfied that the Legislature intends to create a property right, this Court presumes that the Legislature is implementing public policy when it enacts a statute, policy which it is free to change in the future. To presume otherwise would upset the balance of the separation of powers, and affect the Legislature's ability to respond to changing economic conditions." (citation omitted)). That Premier might have had some unilateral expectation that the impact fee rate schedules would not change does not alter this conclusion.[6] *See Env't Control*, 2002-NMCA-003, ¶ 11 (holding that the plaintiff's unilateral expectation that it could continue garbage collection "was not a right cognizable under the [T]akings [C]lause, inverse condemnation clause, or due process clause").

**{18}** For these reasons, the district court did not err in concluding that Premier had no protected property right in static market conditions for its credits. Because of this,

---

[6]We observe that Premier obtained more than $600,000 worth of impact fee credits from Trails months *after* the 2012 Ordinance went into effect. We are hard-pressed to see how Premier could have any expectation regarding the 2005 impact fee rate schedules as to these credits.

Premier cannot assert a viable takings claim, and on this basis alone we may affirm the district court's dismissal of this claim.[7]

## B.       Premier Failed to Allege a Regulatory Taking Under New Mexico Law

**{19}**     Even were Premier to get past the threshold inquiry, Premier's takings claim falters under our New Mexico regulatory takings test, as explained by the district court. But before we examine the district court's holding in this regard, we first dispose of Premier's central contention that the district court erred in its regulatory takings analysis because it declined to apply *Penn Central*. Premier argued both below and now on appeal that dismissal is improper because *Penn Central*'s fact-based, ad hoc inquiry is "controlling." *See* 438 U.S. at 124 (engaging in an "essentially ad hoc, factual inquir[y]" to determine whether a regulatory taking occurred and identifying several factors of particular significance). Upon examination, this assertion is not well-supported.

**{20}**     To begin with, although our courts frequently look to federal takings jurisprudence, *see, e.g.*, *Moongate Water*, 2013-NMSC-018, ¶ 17, *Penn Central* has, to date, not been applied to regulatory takings claims brought under Article II, Section 20. Premier, nevertheless, claims this Court's decision in *SFPT* supports *Penn Central*'s application here. In *SFPT*, we declined to apply the *Penn Central* factors, noting that they were drawn in part from cases involving "a concrete government action, such as a regulation, or the acquisition of resources"—considerations that were absent in the plaintiff's pre-condemnation publicity claim. *SFPT*, 2014-NMCA-093, ¶ 24. Even if our observation in *SFPT* might support the applicability of *Penn Central* where, as here, a regulation has been adopted, our discussion of *Penn Central* in *SFPT* was undertaken exclusively in reference to the plaintiff's takings claim under the Fifth Amendment to the United States Constitution. *See SFPT*, 2014-NMCA-093, ¶ 21. In this case, Premier asserts its takings claim only under Article II, Section 20 of the New Mexico Constitution, not the Fifth Amendment.

**{21}**     What is more, our Supreme Court has made plain—repeatedly since *Penn Central*—the regulatory takings test applicable in New Mexico. In particular,

> [t]he general rule is that a regulation which imposes a reasonable restriction on the use of private property will not constitute a "taking" of that property if the regulation is (1) reasonably related to a proper purpose and (2) does not unreasonably deprive the property owner of all, or substantially all, of the beneficial use of [the] property.

---

[7]To the extent Premier alleged a separate "consequential damages" claim under Article II, Section 20, *see Bd. of Cty. Comm'rs of Lincoln Cty. v. Harris*, 1961-NMSC-165, ¶ 5, 69 N.M. 315, 366 P.2d 710 (construing Article II, Section 20 to permit claims for "consequential damages" in the absence of a taking), such a claim likewise fails in the absence of a protected property right. *See, e.g.*, *Env't Control*, 2002-NMCA-003, ¶¶ 8-11 (holding that, where there is no protected property right, a claim under Article II, Section 20 is non-viable); *Westland Dev.*, 1995-NMCA-136, ¶ 11 ("But if the activity violates no property right of the owner, then the government owes the owner no compensation for engaging in the activity."). We thus do not address Premier's contentions pertaining to consequential damages.

*Temple Baptist Church, Inc. v. City of Albuquerque*, 1982-NMSC-055, ¶ 27, 98 N.M. 138, 646 P.2d 565. This continues to be the regulatory takings test in New Mexico. *See Sanchez*, 1995-NMSC-058, ¶ 10 (stating that this "continues to be the rule in this jurisdiction"); *see also Moongate Water*, 2013-NMSC-018, ¶ 18 (setting out the *Temple Baptist Church* test as governing regulatory takings). Premier provides no argument why our New Mexico regulatory takings test is inadequate, or otherwise inappropriate, in this case, and we decline to develop this argument for Premier. *See Farmers*, 1990-NMSC-100, ¶ 8; *see also Elane Photography*, 2013-NMSC-040, ¶ 70. Even so, we note that this Court remains bound by the precedent of our Supreme Court, and we question whether this is the appropriate forum in which to employ a new regulatory takings framework in New Mexico. *See State v. Manzanares*, 1983-NMSC-102, ¶ 3, 100 N.M. 621, 674 P.2d 511 ("The Court of Appeals is to be governed by the precedents of this Court. This is true even when a United States Supreme Court decision seems contra." (citation omitted)); *Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 15, 306 P.3d 480 (same).

**{22}** In short, Premier's contention that the district court erred by not applying *Penn Central* is without merit, and we consequently do not consider Premier's arguments premised on *Penn Central* and related federal precedent. We thus briefly turn to our New Mexico regulatory takings test. The district court, in applying this test, concluded that Premier failed to plead a loss of all or substantially all beneficial use of its excess credits, notwithstanding an alleged loss in market value.[8] *See Sanchez*, 1995-NMSC-058, ¶ 10 (providing that "only if the governmental regulation deprives the owner of all beneficial use of his property will the action be unconstitutional" (alteration, internal quotation marks, and citation omitted)). We again perceive no error in the district court's ruling.

**{23}** As previously noted, the 2012 Ordinance left intact excess credit holders' abilities to use excess credits to offset impact fees assessed on new developments and to seek reimbursement from the City for excess credits. *See* ARO, § 14-19-19(J)(6)(a), (c). In this vein, Premier has alleged no restriction on its rights to use its credits or to seek reimbursement. Further, Premier has sold credits since the 2012 Ordinance, albeit under allegedly less favorable market conditions that resulted in a loss in value, according to Premier.[9] Premier argues that this loss in market value is synonymous with an invasion of its right to sell credits. Premier, however, fails to cite any authority for this proposition, and we thus may assume none exists. *See Curry*, 2014-NMCA-031, ¶ 28.

---

[8]Because we conclude that Premier has failed to plead a loss of all or substantially all beneficial use of its excess credits, we need not address the first prong of our New Mexico regulatory takings test—i.e., whether the regulation is reasonably related to a proper purpose. *See Sanchez*, 1995-NMSC-058, ¶¶ 7-11 (requiring both prongs of the *Temple Baptist Church* test to be met to make out a regulatory takings claim).

[9]As noted, Premier's amended complaint ignores other aspects of the 2012 Ordinance—such as extending the expiration term of excess credits from seven to fifteen years, *see* Background, paragraph 6, *supra*, and expanding the service area in which excess credits can be used, *see id.*—that very well may have favorable effects on market conditions and value for excess credit holders.

**{24}** But even assuming a loss in market value under these circumstances invades some protected property right, we cannot say the 2012 Ordinance unreasonably deprives Premier of all or substantially all of the beneficial use of its excess credits, given Premier's retention, and in certain instances, expansion, of rights as set out above. Such a loss in value, unaccompanied by the deprivation of other strands in the property rights bundle, as in this case, has been held insufficient to make out a regulatory takings claim under controlling New Mexico precedent. *See, e.g.*, *Chronis v. State ex rel. Rodriguez*, 1983-NMSC-081, ¶ 15, 100 N.M. 342, 670 P.2d 953 (holding, in the due process takings context, that, notwithstanding reduction in the market value of liquor licenses due to changes in the statute, licensees retained the rights to transfer, devise, and use licenses, and to engage in the business of selling alcoholic beverages, and, therefore, the statutory change did not "unreasonably deprive[] the owner of all or substantially all of the beneficial use of his license," and "d[id] not constitute a taking of private property"); *id.* ¶ 40 (Sosa & Federici, JJ., specially concurring and dissenting) (describing economic impact of statutory change); *New Mexicans for Free Enter.*, 2006-NMCA-007, ¶¶ 52-53 (determining that an increase in the minimum wage rate did not constitute a deprivation of all or substantially all beneficial use of businesses, even though business owners alleged economic destruction of their businesses due to the increase); *see also Sanchez*, 1995-NMSC-058, ¶ 11 (noting that the Takings Clause "does not entitle an owner to use property for all economically viable purposes, and governmental actions imposing an incidental economic loss will be upheld"). We have been given no reason to depart from this precedent here, and, for the reasons stated, we conclude Premier has failed to allege a regulatory takings claim under New Mexico law.

**{25}** We affirm the district court's dismissal of Premier's takings claim.

## II.    Illusory Promise

**{26}** We next take up Premier's illusory promise claim. In its amended complaint, Premier alleged that certain provisions in the agreements between the City and the Developers and in the settlement agreement between the City and Trails "were illusory in that the City retained the ability to unilaterally reduce or waive impact fees." The City moved to dismiss Premier's illusory promise claim on the grounds that (1) Premier was not in privity of contract with the underlying agreements, and (2) at any rate, the City made no promises concerning impact fees. Premier responded by arguing only that it had sufficiently alleged it was "the third[-]party beneficiary of those contracts." The district court disagreed and dismissed Premier's illusory promise claim. We affirm.

**{27}** If "a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration[,]" rendering the contract unenforceable. *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶¶ 12, 15, 134 N.M. 558, 80 P.3d 495. But to assert a claim based in contract, such as Premier's illusory promise claim, a party must be in privity with, or an intended third-party beneficiary of, the contract. *See Staley v. New*, 1952-NMSC-102, ¶ 7, 56 N.M. 756, 250 P.2d 893 ("It is the general rule of law that one who is not a party to

a contract cannot maintain a suit upon it."); *see also Leyba v. Whitley*, 1995-NMSC-066, ¶ 11, 120 N.M. 768, 907 P.2d 172 ("Although courts stop short of declaring an intended third-party beneficiary to be in privity of contract, such a party is accorded traditional contract remedies with respect to the bargain intended for his or her benefit."). "There are two classes of third-party beneficiaries: intended beneficiaries and incidental beneficiaries. Only intended beneficiaries can seek enforcement of a contract." *Tarin's, Inc. v. Tinley*, 2000-NMCA-048, ¶ 13, 129 N.M. 185, 3 P.3d 680 (citations omitted). "The paramount indicator of third[-]party beneficiary status is a showing that the parties to the contract *intended* to benefit the third party, either individually or as a member of a class of beneficiaries." *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 34, 105 N.M. 575, 734 P.2d 1258 (emphasis added). Intent may be shown "either from the contract itself or from some evidence that the person claiming to be a third[-]party beneficiary is an intended beneficiary." *Id.*; *see also Tarin's*, 2000-NMCA-048, ¶ 13 (holding that a party may show intent to benefit by "using extrinsic evidence if the contract does not unambiguously indicate an intent to benefit him").

{28}     In this case, Premier did not allege in its amended complaint that it was an intended third-party beneficiary. *See Tarin's*, 2000-NMCA-048, ¶ 8 ("[The] first amended complaint . . . specifically alleged that [the plaintiff] was a third-party beneficiary of the contract[.]"). Instead, Premier argued in opposition to the motion to dismiss that the underlying contractual agreements between the City and the Developers indicated an intent to benefit Premier as a member of a class of beneficiaries. Specifically, Premier asserted that "[b]ecause the credits were fully assignable under the contract[s] between [the Developers] and the City, [Premier] is a valid third[-]party beneficiary[.]" The district court rejected this conclusory argument and dismissed the illusory promise claim because Premier failed to direct the court to any of the contractual provisions allegedly indicating an intent to benefit Premier.

{29}     Premier takes a different approach on appeal. Instead of arguing that the underlying contractual agreements evidenced an intent to benefit Premier, Premier now argues that the *2005 Ordinance* evidenced this intent. According to Premier, "[c]learly the City would not have provided in the 2005 Ordinance . . . that the impact fee credits were freely transferable to third parties[] if the City had not contemplated that third parties such as [Premier] would acquire the impact fee credits and use them." Premier further asserts that the fact it alleged "the impact fees credits were fully assignable . . . pursuant to the City's own Ordinance . . . clearly shows that the City understood and contemplated that the impact fee credits could benefit a third party."

{30}     We reject Premier's argument for a number of reasons. First, Premier's contention that it sufficiently alleged its status as an intended third-party beneficiary because the 2005 Ordinance allowed the Developers to transfer the excess credits is not preserved. "To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717. As noted, Premier's argument for why it sufficiently alleged its status as an intended third-party beneficiary is different from the argument it made to the district

court. Appellate courts ordinarily do not entertain "arguments that differ from those presented [in the district court] concerning the order on appeal." *In re Guardianship of C.G.*, 2020-NMCA-023, ¶ 32, 463 P.3d 487; *see also, e.g.*, *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852 ("We believe that it is a serious mistake to treat district court hearings on motions to dismiss . . . as mere rehearsals for later appellate review." (internal quotation marks and citation omitted)).

**{31}** Second, even if Premier's argument were preserved, it is undeveloped. Beyond perfunctorily citing two cases for the general proposition that a third-party beneficiary may enforce a contract if the parties intended the contract to benefit the third party, Premier provides us no authority for what appears to be the unique proposition that a city ordinance may confer third-party-beneficiary status. "This Court has no duty to review an argument that is not adequately developed[,]" *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 30, 149 N.M. 556, 252 P.3d 780, and we decline to develop Premier's argument ourselves. *See Elane Photography*, 2013-NMSC-040, ¶ 70 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error." (citation omitted)).

**{32}** Finally, even if we assume the 2005 Ordinance may serve as extrinsic evidence of the parties' intent, Premier claims only that the 2005 Ordinance shows the City "understood and contemplated that the impact fee credits could benefit a third party." This is insufficient. A third party does not have the right to sue in contract merely because it *could* benefit from the contract. To obtain such a right, the third party must have been an *intended* beneficiary. *See Tarin's*, 2000-NMCA-048, ¶ 13 (discussing the difference between incidental and intended beneficiaries). In other words, the issue is not whether the City contemplated that the 2005 Ordinance may ultimately have benefited a third party, but whether the City had "reason to know that such benefit [was] contemplated by [the Developers] as one of the motivating causes of . . . making the contract." *Casias v. Cont'l Cas. Co.*, 1998-NMCA-083, ¶ 11, 125 N.M. 297, 960 P.2d 839 (internal quotation marks and citation omitted). Premier neither alleged this in its amended complaint nor argues this point on appeal. Thus, even if we were to reach Premier's unpreserved and undeveloped argument pertaining to its status as a third-party beneficiary, it is without merit. Premier having advanced no other argument in support of its illusory promise claim, we affirm the district court's dismissal of that claim.[10]

**CONCLUSION**

---

[10]Finally, setting aside Premier's failure to allege third-party-beneficiary status, we observe that its illusory promise claim fails on the merits. We have reviewed the agreements attached to the amended complaint, and we have found no reference to the rates of impact fees, let alone any purported illusory promise made by the City regarding those rates. Moreover, as discussed, the 2005 Ordinance specifically provided that the City would periodically review and, if necessary, modify the impact rates. *See, e.g.*, Ordinance 2004-051, § 26. Thus, the Developers who originally contracted with the City would have been on notice that the impact fee rates would not necessarily remain the same in perpetuity.

**{33}** For the foregoing reasons, we affirm.

**{34}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**