This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38901

**AARON B. LOGGINS,**

Plaintiff-Appellee,

v.

**CITY OF ALBUQUERQUE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lisa C. Ortega, District Judge**

Gilpin Law Firm, LLC
Donald G. Gilpin
Christopher P. Machin
Albuquerque, NM

for Appellee

Kennedy, Moulton & Wells, P.C.
Deborah D. Wells
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant City of Albuquerque (the City), appeals from the judgment on a jury verdict in favor of Plaintiff Aaron Loggins on his claims for race discrimination and retaliation under the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-7 to -14 (2005, amended 2020). Finding no error, we affirm.

## BACKGROUND

**{2}**     Plaintiff was a City employee at the time of the alleged discrimination and retaliation. He held various positions with the City from 2001 until his retirement in 2018.

**{3}**     On December 23, 2012, Plaintiff was arrested for driving while intoxicated (DWI). Three days later, he reported his arrest to the City. On January 4, 2013, the City advised Plaintiff it was suspending his City Operator's Permit (COP) and reviewing his job description as a Community Services Program Specialist II (Specialist II) to determine if driving was an essential function of that position.

**{4}**     On February 14, 2013, the City advised Plaintiff that it had concluded that driving was an essential function of the Specialist II position and that it, therefore, was demoting Plaintiff to the position of a community services assistant, a less responsible clerical position. The demotion came with a reduction in pay of $2.14 an hour. On August 12, 2013, Plaintiff was convicted of DWI in court and his driver's license was revoked by the State for a one-year period ending on August 13, 2014.

**{5}**     Plaintiff requested reinstatement to his position and restoration of his COP several times after regaining his driver's license. On January 13, 2016, the City advised Plaintiff it was rejecting his requests, pursuant to the City's policy requiring a COP revocation to stay in effect for a period of three years from the date of a DWI conviction. The City informed Plaintiff he would not be eligible to submit a request for COP reinstatement until August 13, 2016.

**{6}**     On January 22, 2016, Plaintiff, who is white, filed a charge of discrimination with the Human Rights Commission alleging that the City discriminated against him based on his race. The charge stated that the earliest date discrimination took place was August 12, 2014, and the latest date discrimination took place was February 17, 2015. The narrative described two acts of alleged discrimination. The first occurred on August 15, 2015, when the City failed to grant his request to reinstate his COP, and the second on August 17, 2015, when the City did not return him to a Specialist II position. Plaintiff claimed that he was treated differently and less favorably than his Hispanic supervisor who had his COP revoked due to a DWI arrest, conviction, and license revocation, which occurred almost simultaneously with Plaintiff's arrest and conviction. Plaintiff alleged that his supervisor was permitted to remain in his managerial position following his arrest, and then was reinstated to his management position, with his COP restored a year following his conviction.

## DISCUSSION

**{7}**     The City raises twelve issues on appeal. We consolidate the issues raised into five areas for discussion. As we note in our discussion, a number of the issues raised are either difficult to understand or not supported by a developed argument and citation to authority or both. "[The a]ppellant must affirmatively demonstrate its assertion of error." *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063. "We will not review unclear arguments, or guess at what [a party's] arguments might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137

N.M. 339, 110 P.3d 1076. After careful review of the claims that were sufficiently developed for us to understand the City's contentions, we are not persuaded by the City's claims of error. We therefore affirm the district court's judgment in all respects.

## I.     The City's Objection to the Failure of the District Court to Focus the Trial Exclusively on the Events of August 15 and 17, 2015

{8}     The City argues as its first issue, Issue No. 1 that the district court erred in allowing Plaintiff to present evidence of events occurring before and after August 15 and 17, 2015, the only two dates for which the City claims Plaintiff properly exhausted his administrative remedies. Although the City asserts that this issue was preserved for appeal, its brief fails to identify the objections on this basis to the admission of evidence at trial. "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted). The objection must be made each time the allegedly inadmissible evidence is offered, or the district court must otherwise be alerted to the objection. *Id.*

{9}     Our review of the transcript shows that the City not only did not regularly object to the admission of this evidence, but it also invited any error now complained of by questioning its witnesses at trial about events occurring prior to August, 2016. "It is well established that a party may not invite error and then proceed to complain about it on appeal." *State v. Jim*, 2014-NMCA-089, ¶ 22, 332 P.3d 870. The City, therefore, failed to preserve this argument for appeal. We will not consider whether the admission of this evidence may have been plain error, the City not having made this argument on appeal. *See Ware*, 1994-NMCA-132, ¶ 10 ("Briefs on appeal must clearly and cogently identify the issues on which reversal is sought.").

{10}     The City next claims in its Issue No. 2 that the district court erred in rejecting the City's proposed jury instructions requesting that the dates, August 15, 2015, and August 17, 2015, be added to each of the instructions. The City's brief does not describe or cite to the district court's ruling. Our review shows that the district court refused to add the dates requested, finding that the evidence at trial had gone way beyond those two dates. On appeal, "there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." *State v. Oppenheimer & Co.*, 2019-NMCA-045, ¶ 8, 447 P.3d 1159 (alterations, internal quotation marks, and citation omitted). The City having failed to present any argument or authority showing that the district court erred in concluding that the jury had been presented with a broader course of events with the agreement of the City, beginning as early as 2012, we affirm the district court's rejection of the City's proposed jury instructions 1, 2, 3, 5, 6, 10, and 11. We note as well as an alternative ground for our decision that jury instruction 12, the instruction explaining Plaintiff's discrimination claim to the jury, describes the August 15 and 17, 2015 events quite specifically, although without specifying the date. The City has not explained why the district court's decision to describe the events on those dates, rather than identifying them by date, prejudiced

the City. *See Brooks v. K-Mart Corp.*, 1998-NMSC-028, ¶ 7, 125 N.M. 537, 964 P.2d 98 (holding that any error not causing prejudice to the substantial rights of a party shall be disregarded).

**II.     The District Court Did Not Err in Excluding Evidence About Open Positions at the City From 2015 to 2018**

**{11}**     The City next claims in its Issue No. 3 that the district court erred by not allowing the City to present evidence regarding why Plaintiff's COP was not reinstated and why he was neither returned to the Specialist II position nor placed in another City position requiring a COP between August 2015 and Plaintiff's retirement in 2018. The City wanted to present evidence to show that Plaintiff was not in a position after August 2015, which required a COP and that there was no vacant, budgeted position available in the City where Plaintiff could have been placed during this time period.

**{12}**     The City fails in its appellate brief to present the facts relied on by the district court in reaching its decision to exclude this evidence. Nor does the City accurately report the district court's decision or the reasons given by the court for its ruling. Our review of the record shows that the issue the City raises on appeal concerning the admission of this evidence arose in the context of requests from both parties to introduce evidence concerning events occurring during the August 2015 to 2018 time period. Plaintiff sought to introduce evidence showing that he had applied for transfer to a number of advertised positions at the City requiring a COP during the 2015 to 2018 time period and that the City rejected those applications. The City wanted to claim that these same positions were not available.

**{13}**     Confronted with the requests of both parties to introduce evidence concerning this time period, the district court ruled that Plaintiff would not be permitted to present evidence showing that he had applied for numerous positions, and had been rejected because those claims had not been timely exhausted. Having excluded that evidence, the district court ruled that it would also exclude the City's evidence showing that there were no vacant positions during that same time period. The district court reasoned that it could not allow the City to raise that defense without opening the door to Plaintiff's contrary evidence that there were multiple open positions he applied for during the same time period. The court limited the City's testimony to showing that Plaintiff's clerical assistant position did not require driving and that no Specialist II position was vacant from 2015 through 2018.

**{14}**     The City fails to present any argument explaining why it believes the district court abused its discretion in excluding both Plaintiff's testimony as to open positions and the City's testimony denying that there were any open positions. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. A minimally adequate argument on this question therefore requires an explanation, in the context of the facts and circumstances, as to why the district court's decision was illogical. The City fails to explain the facts and circumstances or to

offer an explanation of why the district court's decision was illogical given those facts and circumstances, and so we apply our presumption of correctness and affirm. *See Oppenheimer & Co.*, 2019-NMCA-045, ¶ 8 (providing that "there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (alterations, internal quotation marks, and citation omitted)).

### III. The District Court Did Not Err in Refusing to Modify UJI 13-2307A NMRA to Require the Jury to Find Intentional or Purposeful Conduct

**{15}** The City contends in its Issue Nos. 4 and 5 that the district court erred in instructing the jury on the intent required to establish discrimination. The City asked the district court to instruct the jury that it must find the City "intentionally or purposefully discriminated against Plaintiff based on his race" and that "[the law] prohibits only intentional discrimination."

**{16}** We note initially that the district court gave a modified version of the City's proposed jury instruction 8:

> The law does not make unexplained differences in treatment automatically illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only discrimination based upon an employee's protected class characteristics.

And further instructed the jury as follows:

> The relevant inquiry is not whether [the City's] reasons for its actions were, wise, fair or correct, but whether . . . [the City] honestly believed those reasons and acted in good faith upon those beliefs.

**{17}** Therefore, the City's sole viable claim of error appears to be that the district court also gave UJI 13-2307A, which requires the jury to find that a plaintiff's race or (membership in some other protected group) was "a motivating factor" in the defendant's discriminatory action. The City's proposed instruction would have added a sentence telling the jury that the City's discriminatory action must be "intentional or purposeful."

**{18}** Our Rules of Civil Procedure allow the district court to deviate from a UJI only if "under the facts or circumstances of the particular case the published UJI Civil is erroneous or otherwise improper, and the [district] court so finds and states [on the] record its reasons." Rule 1-051(D) NMRA. Because UJI 13-2307A plainly applies to Plaintiff's claim of race discrimination under the New Mexico Human Rights Act, the City must establish that the UJI 13-2307A "improperly characterized the law of this [s]tate as it applied to the facts of this case" and that it "was necessary and proper for the trial judge to modify the [UJI]." *Brooks*, 1998-NMSC-028, ¶ 7.

**{19}** The City presents no argument or authority showing that UJI 13-2307A is in any way an improper or erroneous statement of New Mexico law. The instruction is consistent with the decision of our Supreme Court construing the intent to discriminate required by our Human Rights Act. *See Nava v. City of Santa Fe*, 2004-NMSC-039, ¶¶ 8-9, 136 N.M. 647, 103 P.3d 571. *Nava* holds that the intent required for discrimination under the Human Rights Act is that the plaintiff's membership in a protected class "was a motivating factor" in the conduct alleged to be discriminatory. We therefore conclude that the jury was properly instructed on intent to discriminate.

**{20}** The City raises one other claim of error in the district court's adoption of UJI 13-2307A: that the bracketed language in the last paragraph of the UJI instructs the jury that it "may infer" that the City took this action because of Plaintiff's race if the jury disbelieves the reasons given by the City for its actions. The City argues, in its Issue No. 11, that the district court erred in not replacing the phrase "may infer" with the phrase "could, but is not required to infer."

**{21}** We see no difference in meaning between the UJI instruction that the jury "may infer" discrimination and the City's proposed "could, but is not required to infer" language. *See Thriftway Mktg. Corp. v. State*, 1992-NMCA-092, ¶ 10, 114 N.M. 578, 844 P.2d 828 (providing that the word "may" means that the action is not mandatory but can or cannot be taken). The district court therefore did not err in choosing the language of the UJI over the City's more cumbersome phrase with identical meaning.

## IV. The District Court Properly Instructed the Jury on Plaintiff's Burden in His Retaliation Claim

**{22}** The City contends in its Issue No. 6 that the district court erred in refusing to instruct the jury that it was required to find that the City's sole motive for its actions was to retaliate against Plaintiff for filing a discrimination complaint. The City argues that New Mexico courts are required to adopt the decision of the United States Supreme Court in *University of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338 (2013), a case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e), and apply it to claims of retaliation brought under our Human Rights Act. The United States Supreme Court in *Nassar* held that Title VII retaliation claims must be proved according to traditional principles of but-for causation. Relying on "[t]he text, structure, and history of Title VII." *Nassar*, 570 U.S. at 362, the *Nassar* court refused to extend the lessened causation test stated in Title VII, 42 U.S.C. Section 2000e-2(m), for claims of discrimination to claims of retaliation. *Id.* at 360.

**{23}** In support of its argument, the City cites to our Supreme Court's decision in *Trujillo v. Northern Rio Arriba County Electric Coop., Inc.*, 2002-NMSC-004, ¶ 8, 131 N.M. 607, 41 P.3d 333. *Trujillo*, however, disavows any intent to adopt federal law as our own, explaining that New Mexico courts "rely upon federal adjudication for guidance in analyzing a claim under the [Human Rights] Act, with the following reservation:

Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own. Our analysis of this claim is based on New Mexico statute and our interpretation of our [L]egislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute.

*Id.* (internal quotation marks and citation omitted). We, therefore, reject the City's contention that *Trujillo* requires us to adopt federal law. The City did not argue that this Court should adopt the rule in *Nassar* as a proper construction of our Human Rights Act. We, therefore, we do not address this issue further. *See State v. Ware*, 1994-NMCA-132, ¶ 10, 118 N.M. 703, 884 P.2d 1182 ("Briefs on appeal must clearly and cogently identify the issues on which reversal is sought.").

**{24}**    The district court did not err in instructing the jury that retaliation need only be "a motiving factor" in the employer's decision.

## V.    The District Court Did Not Err in Instructing the Jury on Damages

**{25}**    The remaining issues on appeal, identified in the City's brief as Issue Nos. 7, 8, 9, 10, and 12, concern the jury instructions on damages and the sufficiency of the evidence to support the jury's award of damages for both emotional distress and lost wages.

**{26}**    The City contends that the district court erred in instructing the jury on damages using UJI 13-2310 NMRA, the UJI specifically addressing damages for a violation of the Human Rights Act, rather than UJIs 13-1802 and -1808 NMRA, the instructions for damages in a personal injury case.

**{27}**    The City contends that, because Plaintiff was receiving military disability benefits for an unidentified mental condition, Plaintiff was required to introduce the testimony of a medical expert, and the district court was required to instruct the jury on aggravation of a preexisting condition. The City claims that in the absence of this medical evidence and jury instruction, any award of damages for emotional distress was not supported by sufficient evidence and must be reversed.

**{28}**    The district court rejected these arguments on the basis that UJI 13-2310 specifically states the law governing damages for a violation of the Human Rights Act and is, therefore, the appropriate instruction on damages. The district court also found that lay evidence of Plaintiff's emotional distress caused by the City's Human Rights Act violations was sufficient to allow the jury to award emotional distress damages. We agree with the district court on both issues.

**{29}**    First, the City offers no reasoned argument and no authority to support its claim that the measure of damages in personal injury actions applies to an action for violation

of the Human Rights Act. The authority cited by the City in its brief arises solely in the context of personal injury claims.

**{30}** In addition to failing to address the distinctions between personal injury and Human Rights Act cases, the City fails to provide a reasoned argument supporting its claim that a medical expert was required in this case. Plaintiff sought only straightforward emotional distress damages and did not claim damages for aggravation of a preexisting condition. *See Folz v. State*, 1990-NMSC-075, ¶ 44, 110 N.M. 457, 797 P.2d 246 (holding that medical expert testimony is not always necessary to establish emotional injury). We remind the City that "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. "We will not review unclear arguments, or guess at what a party's arguments might be." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (alteration, internal quotation marks, and citation omitted).

**{31}** Second, we agree with the district court that the evidence at trial was sufficient to support the jury's award of emotional distress damages. Plaintiff claimed that he suffered emotional stress, mental anguish, and humiliation caused by the City's discriminatory practices. At trial, Plaintiff testified about how much he loved his Specialist II job. He said that he was very disheartened when the City did not respond to his COP request. He ultimately felt he could not go on working for the City and retired with what he described as a very heavy heart. Two coworkers testified to Plaintiff's emotional reaction to the charged conduct. Tammy Young testified at trial that Plaintiff was not really sleeping during the time he sought a new COP and return to his previous position. Ms. Young said she could just see the stress on his face. James Noland testified that he saw Plaintiff crying during this same time period and Plaintiff appeared visibly upset all the time. This evidence was sufficient under the relevant jury instruction to place this issue before the jury.

**{32}** The City also argues that the evidence of Plaintiff's lost wages was insufficient to allow the jury to decide the amount without speculating. We do not agree. The Plaintiff provided his hourly rate of pay, evidence that he worked full time, and evidence that a full time worker for the City worked 2,080 hours a year. Evidence of five hours of overtime a year is also in the record. We agree with the district court that this evidence was sufficient to allow the jury to award compensation for lost wages. We note that our "[c]ase law does not require absolute certainty in making a lost-wage determination in employment discrimination cases. Once evidence of damages is presented, the employer, not the employee, bears the burden of uncertainties in the calculations." *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶ 37, 124 N.M. 591, 953 P.2d 1089.

## CONCLUSION

**{33}** For the foregoing reasons, we affirm the jury's verdict and the judgment of the district court in all respects.

**{34}** IT IS SO ORDERED.

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**